IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re: STEVE ZIMMER PAIGE, <br>       Debtor. <br><br> SEARCH MARKET DIRECT, INC., and MAGNET MEDIA, INC., <br><br>     Appellants, <br><br><br><br> vs. <br><br><br> GARY E. JUBBER, Trustee of the Bankruptcy Estate of Stephen Zimmer Paige, and CONSUMERINFO.COM, <br><br><br>     Appellees. <br><br> SEARCH MARKET DIRECT, INC., et al., <br><br>     vs. <br><br> GARY E. JUBBER, Trustee of the Bankruptcy Estate of Stephen Zimmer Paige. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS APPEAL AS MOOT AND DISMISSING APPEAL <br><br><br><br><br><br> Case No. 2:07-CV-822 TS <br><br> Bankruptcy Case No. 05-34474 |

## I.  INTRODUCTION

An appeal may become constitutionally moot if some post-appeal event makes it "impossible for the court to grant 'any effectual relief whatever'"[1] or become equitably moot when the disruption of a substantially consummated bankruptcy plan of reorganization "would unduly impact innocent third parties."[2]  Appellants (SMDI)[3] contend that the confirmed plan is not substantially consummated because paying creditors at this stage was an unauthorized modification of the plan.  SMDI also contends that this Court may still fashion effective relief on appeal by conditioning reversal of the confirmation order upon SMDI being able to obtain enough cash to pay claims and expenses under its own competing plan without disruption.  In this case the confirmed plan is substantially consummated, there is no evidence that there are sufficient funds to maintain the payment status quo if that confirmation were reversed, and it would unduly impact innocent third party creditors if the plan confirmation were reversed.  Therefore, the Court will be "unable to fashion an effective remedy for [SMDI and] it would be inequitable to do so."[4]

---

[1] *In re: Milk Palace Dairy, LLC.*, 327 B.R. 462, 466-467 (10th Cir. BAP 2005) (quoting *Osborn v. Durant Bank & Trust Co.* (*In re Osborn*), 24 F.3d 1199, 1203 (10th Cir. 1994) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

[2] *Id*. at 467.

[3] Appellees Search Market Direct, Inc. and Magnet Media, Inc., are collectively referred to as SMDI.

[4] *Milk Palace Dairy,* 327 B.R. at 464.

## II.  BACKGROUND

Appellant Search Market Direct, Inc. (SMDI) seeks reversal of the Bankruptcy Judge's ruling confirming one Chapter 11 plan (proposed jointly by Appellees, the Chapter 11 trustee, and Consumerinfo.com) and denying confirmation of SMDI's competing Chapter 11 plan.  As recognized by the Bankruptcy Judge, the issue at the heart of the competing plans is whether Consumerinfo.com or SMDI will end up with the domain name "freecreditscore.com."  The full history of the complicated bankruptcy proceedings leading up to this appeal is summarized with admirable organization, clarity, and brevity in the background section of the Bankruptcy Judge's Memorandum Decision[5] confirming one plan (the confirmed plan) and denying confirmation of the competing SMDI plan (the SMDI plan).  The Court largely adopts that Background and will not repeat it herein except as follows for context:

Prior to confirmation, the Bankruptcy estate was attempting to recover the domain name in an Adversary Proceeding filed against SMDI.  The competing plans proposed radically differently treatment of that Adversary Proceeding.  The confirmed plan will pursue recovery of the domain name under the Adversary Proceeding. The funding for the confirmed plan, and the resulting continuation of the Adversary Proceeding, comes from Consumerinfo.com, which already purchased a major interest in the Adversary Proceeding. It purchased that interest in December 2006 for $1.9 million in cash and, as a result, has

---

[5]*In re Paige*, No. 05-34474, slip op. at 2-13 (Bankr. D. Utah Nov. 13, 2007) (hereinafter "Decision").

been added as a plaintiff to the Adversary Proceeding.[6]  The order approving the sale agreement (the Asset Purchase Agreement or the APA) was approved December 13, 2006, and was not appealed.  Thus, it is a final order.  Under the APA, if the Adversary Proceeding is successful in recovering the domain name, Consumerinfo.com is entitled to a conveyance of the domain name with no further payment, plus it will receive 25% of any damages recovered.  The confirmed plan used the $1.9 million, plus significant additional monies advanced by Consumerinfo.com since confirmation, to pay claims.  The Bankruptcy Court found the confirmed plan met all of the requirements for confirmation, including that it was proposed in good faith.[7]

SMDI appeals the Bankruptcy Court's Decision to confirm the plan on several bases, including alleging error in the findings that the confirmed plan was proposed in good faith, the trustee was disinterested, and that the Chapter 7 equivalency test was met.[8]

In contrast to the confirmed plan, under the SMDI plan the Adversary Proceeding would be settled and dismissed by payment from SMDI as the defendant therein. Such settlement would trigger, at a minimum, the requirement under the APA to repay Consumerinfo.com back the total purchase price, now over $2 million, with interest.

---

[6]With added legal fees, Consumerinfo.com has now paid the estate $2,050,000 under the APA.  Docket No. 74, Ex. B, at ¶¶ 34-35.

[7]11 U.S.C. §1129(a)(3) ("the court shall confirm a plan only if all of the following requirements are met: . . . (3) the plan has been proposed in good faith and not by any means forbidden by law. . . .").

[8]*See* Docket No. 32, SMDI's Opening Brief on the merits of this appeal.

The parties have sharply differing interpretations of whether the APA and/or the Bankruptcy Code's reorganization provisions allow dismissal of the Adversary Proceeding under the terms of the SMDI plan.  The Bankruptcy Court's Decision declined to confirm SMDI's plan based upon its findings that, among other things, SMDI's plan's proposed treatment of the Adversary Proceeding was not consistent with the "terms of the sale under section 363(b) and (f) of the Bankruptcy Code and the Court-approved APA,"[9] that settlement could not be imposed on the trustee, the SMDI plan was not proposed in good faith, and was not feasible.  SMDI challenges these rulings in the merits of this appeal[10] and seeks judgment on appeal reversing confirmation of one plan and the denial of the confirmation of its plan.

The Chapter 11 trustee and Consumerinfo.com move to dismiss this appeal because the confirmed plan is substantially consummated and, as a result, the Court cannot grant SMDI any effective relief in this appeal.  As noted above, SMDI contends that there is not substantial consummation, that effective relief can be granted, and that it would not be inequitable to do so.

### III.  LAW REGARDING MOOTNESS

In the case *In re: Milk Palace Dairy, LLC.*, *supra*, the Bankruptcy Appellate Panel for this circuit has explained the standards applicable to determining the mootness of an appeal of a confirmation order as follows:

---

[9]Decision at 27.

[10]Docket No. 32.

5

> Before reaching the merits of an appeal, [the court] must make an initial determination as to whether [it has] jurisdiction, as well as decide the Appellees' Motion to Dismiss. Two concepts of mootness impact this determination. First, the Constitution authorizes federal courts to hear only "cases" or "controversies." There is no case or controversy if some event has occurred post-appeal that makes it "impossible for the court to grant 'any effectual relief whatever,'" and the appeal is moot. This is the concept of constitutional mootness. Second, if we can fashion effective relief for [appellant] and this appeal passes the constitutional mootness test, we must still determine if ordering such relief would be equitable because this appeal arises in the context of a confirmed Chapter 11 case involving multiple parties. This is the concept of "equitable" mootness. Equitable mootness deals with parties' reliance upon a substantially consummated plan of reorganization and the point at which modification of that plan would unduly impact innocent third parties.[11]

If, however, there is a possibility of recovery to which an appellant might be entitled or some measure of effective relief that can be fashioned, then the appeal is not moot.[12]

> There are five factors that may be considered when determining if equitable or prudential mootness is applicable. These factors, which may be given "varying weight, depending on the particular circumstances" of any given case, include: (1) whether a plan has been *substantially consummated*; (2) whether a stay pending appeal has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the confirmed plan; and (5) the public policy of affording finality to bankruptcy court judgments.[13]

Determination of when the confirmed plan is "substantially consummated" is determined by reference to the definition set forth in § 1101(2):

---

[11] 327 B.R. at 466-467 (quoting U.S. Const. art. III, § 2, cl.1) and *Osborn v. Durant Bank & Trust Co.* (*In re Osborn*), 24 F.3d 1199, 1203 (10th Cir. 1994) (quoting *Church of Scientology*, 506 U.S. at 12 (1992)) (footnotes and other citations omitted).

[12] *In re Long Shot Drilling, Inc.*, 224 B.R. 473, 478 (10th Cir. BAP 1998).

[13] *Id.* at 479 (quoting In re Continental Airlines, 91 F.3d 553, 559-60 (3d Cir. 1996) (emphasis added)).

(2) "substantial consummation" means—

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C) commencement of distribution under the plan.[14]

The trustee and Consumerinfo.com have the burden of showing that the confirmed plan is substantially consummated. An appellant has the "legal burden to rebut the presumption of mootness resulting from . . . substantial confirmation."[15] "Under the equitable mootness doctrine, there is a strong presumption that [the court] should not entertain the merits of [bankruptcy] appeals, unless [the court] could fashion a remedy that would not harm third parties."[16]

### IV.  FACTS RE: SUBSTANTIAL CONSUMMATION

The following events have occurred post-confirmation: The Trustee and Consumerinfo.com executed a waiver of the "final order" condition contained in the confirmed plan.[17] The Liquidating Trust was established. The estate's assets, including its interest in the Adversary Proceeding, were transferred into the Liquidating Trust. The

---

[14] 11 U.S.C. § 1101(2).

[15] *In re Loral Space & Communications Ltd*. 2008 WL 484723, 1 (2nd Cir. Feb. 22, 2008).

[16] *Long Shot Drilling*, 224 B.R. at 480.

[17] *See* Docket No. 43, Ex. A.

Liquidating Trustee[18] was substituted as party plaintiff in the Adversary Proceeding and has prosecuted that case since then, including taking numerous depositions.

All allowed claims of unsecured creditors (approximately 40 claims) were paid in full and with all accrued interest in the amount of $294,532.52. The payments to unsecured creditors were in connection with the voluntary subordination of two claims held by Consumerinfo.com.[19] One subordinated claim was undisputed and allowed at $131,800.[20] The other subordinated claim, hotly disputed, was estimated for confirmation purposed at $225,000.[21] Neither subordination would apply if the confirmation were reversed.

All allowed non-governmental priority claims have been paid in full in the amount of $15,763.84. Pre-confirmation administrative expenses totaling $658,929.93[22] have been paid. The Bankruptcy Court ruled on the Plan Trustee's objections to claims, disallowing twelve claims.[23] The Plan Trustee has objected to federal and state tax claims and reached agreements compromising those claims with those taxing authorities. Interim payments on the state and federal tax claims now total $550,000. In addition, the Plan

---

[18] Mr. Jubber, the Chapter 11 trustee, is also the Plan Trustee and the Liquidating Trustee.

[19] Consumerinfo.com purchased these claims during the bankruptcy proceedings. *See* Decision at 8.

[20] *Id*. at 10.

[21] *Id.*

[22] This figure includes amounts paid for the debtor-in-possession's attorney.

[23] Including the Axiom Financial claim.

8

Trustee has paid interim payments on the state and federal tax arising from the APA in the amount of $310,000. These payments to taxing authorities reduce the accruals of interest and penalties. The Plan Trustee compromised one claim against another defendant in the adversary proceeding, PSNet, in the amount of $23,454, with an agreement to defer payment. Like the subordination, this compromise would not survive reversal of confirmation.

There is no evidence that, if the confirmation were reversed, there would be sufficient funds available to the estate to repay all of these amounts at this time. The evidence is quite the reverse. SMDI does not even suggest that it would advance such funds unless (1) the denial of confirmation of its own plan were also reversed and (2) it was able to implement its own plan. There is also no evidence that SMDI has, as of the date of the hearing on this matter, sufficient funds to cover all of the payments made under the confirmed plan and to implement the SMDI plan in its place. Despite repeated challenges to show it has such funds, SMDI has not done so. Instead, it argued at the hearing on this matter that it should be given a "reasonable" time to show it can obtain such funds, but only after this appeal is decided in its favor by reversing both the confirmation of the plan and the denial of confirmation of its plan. SMDI advanced the novel argument that, if the confirmation were reversed but SMDI could not obtain such funds, that the Court could order that the confirmation of the Trustee's and Consumerinfo.com's plan could then "stand."

## V.  DISCUSSION AND CONCLUSIONS

The Trustee and Consumerinfo.com contend that this appeal is constitutionally and equitably moot.  In support they cite their evidence that since the confirmation actions meeting all of the elements of "substantial consummation" have been completed and there was a waiver of the plan's provision that it not be effective until it is a final order.  They also argue that innocent third parties would be harmed by a reversal of the confirmation.  They also contend that it is not possible to remedy the harm to third parties by substituting SMDI's unconfirmed plan because (1) SMDI's plan is unconfirmable as found by the Bankruptcy Court; and (2) there is no evidence that there are currently funds available sufficient to make creditors whole if the confirmation is reversed and the other plan were substituted.  The Trustee and Consumerinfo.com also contend that SMDI should not be allowed to challenge the substantial confirmation status of the confirmed plan because SMDI accepted and retained the payment of its claim under that confirmed plan.

SMDI contends that this appeal is not constitutionally moot because it claims that no party's rights would be affected by reversal if the Court, at the same time, reversed the confirmation of the plan and implemented the SMDI plan.  SMDI argues that under its plan creditors would also be paid in full and therefore they would suffer no detriment from the reversal.

The Court finds that this appeal is constitutionally moot because there have been events post-appeal that make it "impossible for the court to grant 'any effectual relief

whatever.'"[24]  The key events are the payments of claims to non-party creditors, including governmental tax authorities, the compromise of claims by the Plan Trustee, including the claims of the taxing authorities, and the transfer of the Adversary Proceeding into the Liquidating Trust where it has been prosecuted.  "Any relief would require non-party creditors, over whom this court has no authority, to disgorge payments to which they were indisputably entitled."[25]  In the absence of evidence that there is money to cover the payments made under the Plan, there simply is no way for this Court to require that payments to so many innocent nonparty creditors be disgorged or to unwind the post-confirmation resolution of so many claims.

Further, even if this case were not constitutionally moot, the Court finds that it is equitably moot.  SMDI argues that the appeal is not equitably moot because there has been no substantial consummation where the "effective date" of the plan has not yet occurred.  In making this argument, SMDI relies upon the following language from the confirmed plan:

> "Effective Date" shall mean the date on which the order approving Confirmation becomes a Final Order and all other conditions to effectiveness set forth in Section 16.4 hereof are satisfied.  The Plan Proponents [the trustee and Consumerinfo.com] may jointly consent to in writing to waive any condition or shorten[] any time period under this Plan.[26]

---

[24]*Milk Palace Dairy*, 327 B.R. at 466-467 (quoting *Osborn*, 24 F.3d at 1203 (quoting *Church of Scientology*, 506 U.S. at 12)).

[25]*In re Planet Pro, Inc.*, 214 Fed. Appx. 646, 648 (9th Cir. 2006) (finding that where there was no stay and all creditors except appellant were paid under the plan, neither the appellate court nor the bankruptcy court "could fashion effective relief related to . . . legal challenges to the plan").

[26]Confirmed Plan, at § 1.23.

SMDI contends that the confirmation order is not yet a "final order" due to this appeal. It contends that the Appellees' "attempted waiver" of the final order provision is either a violation of the confirmed plan or an impermissible attempt to modify the confirmed plan without compliance with the Bankruptcy Code.[27]

The Court finds that the Trustee's and Consumerinfo.com's written waiver of the final order condition precedent for the effective date exercises a right provided in the plan. Therefore, the waiver is not, as argued by SMDI, a modification of the plan. Instead, the waiver is the operation of one of the express provisions of the plan. Because the express language of the confirmed plan allowed Appellees to waive the final order condition, the effective date of the confirmed plan was October 31, 2007, the day after the execution of the written waiver.

It is not seriously disputed that post-confirmation all estate property intended to be transferred has been transferred, the Liquidating Trustee and/or Plan Trustee as successor to the trustee has assumed management of the property dealt with under the confirmed plan, and the Plan Trustee has made many substantial distributions under the plan. Accordingly, the Trustee and Consumerinfo.com have met their burden of establishing all of the elements of substantial consummation under § 1101(2).

Turning to the other factors for equitable mootness, the Court finds that a stay pending appeal was not obtained, but that SMDI made every effort to obtain such a stay.

---

[27]*See* 11 U.S.C. § 1127 (governing modification of plans in Chapter 11 cases).

In such a situation where a "stay was sought, [the court] will provide relief if it is at all feasible, that is, unless relief would 'knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court.'"[28] This factor then should be considered together with the next factor, whether the relief requested would affect the rights of parties not before the court.

As discussed in connection with constitutional mootness, property has been transferred, substantial payments have been made to innocent third parties, claims compromised, and the Adversary Proceeding prosecuted by the Plan Trustee, all under the terms of the confirmed plan. As discussed, it simply is not possible at this point to unwind those transactions. It would "knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court" to require it to try and unwind all of these actions.

SMDI argues that there would be no disruption because (1) its plan could be implemented in place of the confirmed plan; and (2) no disgorgement would be required because it has the cash to fully fund its plan.

Neither of these arguments is tenable. Even if the Court were to continue this appeal, address the merits of the appeal of the confirmed plan and reverse the confirmation, it is clear that there is one inescapable impediment to "implementation" of the SMDI plan—there is a final and unappealed sale order under § 363 of the Bankruptcy

---

[28] *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005) (quoting *In re Chateaugay Corp.* (*Chateaugay I*), 988 F.2d 322, 325 (2d Cir. 1993)).

Code, selling the interest in the Adversary Proceeding to Consumerinfo.com. Therefore, that sale is an accomplished fact not to be changed by the confirmation of the confirmed plan. Because the APA is a final order, this Court cannot grant SMDI the relief it seeks, effectively cutting off Consumerinfo.com's rights in the Adversary Proceeding, in this appeal. One right that Consumerinfo.com has under the APA is the right to overbid.[29] Thus, even if the trustee could be forced under the SMDI plan to settle the Adversary Proceeding against SMDI by accepting a payment from SMDI, Consumerinfo.com retains the right to outbid any payment by SMDI. In such a bid, Consumerinfo.com is entitled to credit for the $1.9 million it already paid. Thus, Consumerinfo.com has the ability to outbid SMDI for little additional cash. Because Consumerinfo.com's overbid right cannot be cut off by this appeal, there is a great likelihood that any relief this court could fashion would be ineffective on that ground alone.

Next, even if the overbid right was not exercised and all other hurdles to confirmation of SMDI's substitute plan were overcome, and that is a huge leap, the Court has found above that is no evidence at this point that there is sufficient money in place to immediately and fully cover all amounts paid under the confirmed plan. Without the subordination of claims and extra cash advanced by Consumerinfo.com under the confirmed plan, there would be no possibility that all claims would be covered.

---

[29] APA § 1.5 (providing that any settlement of the Adversary Proceeding is subject to several conditions including consultation with Consumerinfo.com, Bankruptcy Court approval, and "the opportunity of [Consumerinfo.com] to object to or overbid (with [Consumerinfo.com] receiving a credit of" its $1.9 million purchase price).

The Court rejects SMDI's argument that there is no equitable mootness because the Court can fashion relief by reversing and remanding upon condition that SMDI be given a reasonable time to obtain the necessary funding and, if it cannot, that the confirmation should "stand," or more accurately, be reinstated.  There is no authority or precedent for such a provisional resolution of an appeal as dependent upon the availability of funding for the presumptively prevailing party.

Upon reversal of the confirmed plan, it would cease to exist thereby "knocking the props out from under" the payments made and claims compromised post-confirmation.  This situation, combined with waiting to determine if funding could be obtained before the SMDI plan could be implemented would create "an unmanageable, uncontrollable situation for the Bankruptcy Court."[30]  This is especially true if the result on the merits of the appeal were that the Decision be reversed as to confirmation of the confirmed plan but affirmed as to the denial of the confirmation of the SMDI plan.

The next factor is whether the relief requested would affect the success of the confirmed plan.  The Court finds that the relief requested would entirely undo the already accomplished success of the confirmed plan.

The last factor is the public policy of affording finality to bankruptcy court judgments.  This factor weighs heavily in favor of mootness.  Non-party creditors have relied upon the plan confirmation in either accepting full payments of their claims or in compromising other claims.  The relief sought by SMDI is all premised on the hope that it can use this appeal

---

[30] *In re Metromedia Fiber Network*, 416 F.3d at 144 (quoting *Chateaugay I*, 988 F.2d at 325).

to undo a Bankruptcy Court order regarding the APA, when it chose not to appeal that sale order. Such a situation, even if the court had the authority to order such relief in this appeal, would entirely undermine the finality of Bankruptcy Court orders approving the sale of property.

For the foregoing reasons the Court finds that this appeal is also equitably moot.

## VI.  ORDER

Based on the foregoing, it is therefore

ORDERED that Appellees' Motion to Dismiss Appeal for Mootness (Docket No. 41) is GRANTED. It is further

ORDERED that this appeal is DISMISSED. The clerk of court shall close this case forthwith.

DATED  May 13, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge