## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH - CENTRAL DIVISION

In re

STEVE ZIMMER PAIGE,

     Debtor.

---

SEARCH MARKET DIRECT, INC., and
MAGNET MEDIA, INC.,

     Appellants,

v.

GARY E. JUBBER, Trustee of the
Bankruptcy Estate of Stephen Zimmer Paige,
and CONSUMERINFO.COM, INC.,

     Appellees.

**ORDER ON APPEAL FROM
BANKRUPTCY COURT**

Case No. 2:07-CV-822

Judge Dee Benson

---

Appellant Search Market Direct, Inc. ("SMDI") seeks reversal of the bankruptcy court's ruling confirming one Chapter 11 plan (proposed jointly by the Chapter 11 trustee and ConsumerInfo.com) and denying confirmation of SMDI's competing Chapter 11 plan. The court heard oral argument on the matter on August 24, 2010. For the reasons set forth below, the bankruptcy court's decision is AFFIRMED.

### BACKGROUND

The debtor, Steve Zimmer Paige, filed this case *pro se* under chapter 7 of the Bankruptcy Code on September 16, 2005.[1] Gary Jubber was appointed as the chapter 7 trustee. At some

---

[1]In large part the court's background follows the bankruptcy court's summary of the history of this case. *See In re Paige*, No. 05-34474, 2007 WL 4143212, at *1–7 (Bankr. D. Utah 2007).

time before September 2005, Mr. Paige was involved in the creation of the internet domain name "FreeCreditScore.com" (the "Domain Name"). However, when Mr. Paige filed his case, he did not list the Domain Name as an asset nor did he list it as something transferred. In early 2006, an assignee of the debtor, without knowledge of the trustee, transferred the Domain Name to SMDI for $350,000. SMDI was not aware of the debtor's bankruptcy case at the time. Mr. Steven May is the principal and owner of SMDI. Subsequent to the SMDI transfer, the trustee became aware of the debtor's interest in the Domain Name and began an investigation as to the estate's rights in the Domain Name. The trustee concluded that the estate had a right to the Domain Name or could recover it, and initiated an adversary proceeding ("AP") against SMDI, Steven May, and others to recover the Domain Name. In the AP, the trustee alleged that the debtor had wrongfully conveyed his interests in the Domain Name to the defendants, and that such transfer should be declared void.

Aside from being a defendant in the AP, SMDI held unsecured claims in this case which SMDI had acquired from other creditors. SMDI also purchased the residual interest in the estate from the debtor.

Mr. Jubber, as chapter 7 trustee, conducted a marketing effort in the fall of 2006 to sell the Domain Name or an interest in the AP. He then sought the bankruptcy court's approval of an auction to sell the Domain Name or the estate's interest in the AP in September of 2006, which was postponed to October. Prior to the hearing on the auction motion, SMDI's counsel contacted the debtor to arrange a meeting between counsel for SMDI, the debtor, and Mr. Noel Hyde, a bankruptcy attorney. Following that meeting, on October 5, 2006, Mr. Hyde filed a motion on behalf of the debtor to convert his chapter 7 case to a chapter 11 case. That motion

was granted on October 6, 2006, and accordingly, the debtor became a debtor-in-possession. Mr. Hyde filed a motion to be approved as counsel for the estate, which was approved on October 13. The day after the court entered its order converting the case to one under chapter 11, Mr. Jubber filed a motion to reconvert the case back to a chapter 7. At an expedited hearing on October 13, the bankruptcy court denied the trustee's motion but found cause and ordered the appointment of a chapter 11 trustee. Mr. Jubber again was selected to be the trustee. As the chapter 11 trustee, Mr. Jubber continued his efforts to sell the Domain Name and/or an interest in the AP. From the date Mr. Jubber was appointed as the chapter 11 trustee, the debtor was no longer a debtor-in-possession. Shortly after the October 13 hearing, Mr. Hyde advised the debtor that he would not be paid from the estate because the trustee had been appointed, and Mr. Hyde told the debtor he could no longer represent him without being paid. The debtor apparently interpreted this to mean that he needed substitute counsel.

Between October 13 and December 7, 2006, the debtor, without Mr. Hyde's knowledge or involvement, initiated contacts with ConsumerInfo and/or its counsel by telephone conferences, voice mail messages and/or text messages. The debtor sought a financial arrangement from ConsumerInfo by way of a consulting agreement, but was unsuccessful. The debtor also advised ConsumerInfo and its attorneys that he was without representation and asked for assistance in obtaining new counsel. Numerous contacts were made by the debtor with ConsumerInfo. Having already sold his residual interest in the bankruptcy estate to SMDI, the debtor was contemporaneously evading SMDI. In fact, on November 22, 2006, SMDI's counsel sent an e-mail to the debtor indicating its frustration with the debtor's non-responsiveness from which SMDI's counsel inferred that the debtor had no further interest in proposing a joint plan of

reorganization. As the bankruptcy court noted, the debtor's actions during this time period indicated that he was more concerned about securing his personal interests rather than those of the creditors.

Eventually, ConsumerInfo agreed to assist the debtor in obtaining substitute counsel. At the time, ConsumerInfo was negotiating with the trustee to make an offer for the Domain Name and was considering offering the trustee enough to pay all creditors in full. ConsumerInfo was concerned about the amounts that were owed to the creditors because the debtor's statement of financial assets and schedules were questionable. ConumserInfo agreed to fund a retainer for debtor's substitute counsel in the amount of $20,000. Accordingly, ConsumerInfo wire transferred $20,000 to Mr. Duane Gillman, the debtor's new counsel.

On November 14, 2006, the trustee filed a motion to sell the estate's interest in the AP to ConsumerInfo for $1.8 million pursuant to an Asset Purchase Agreement (the "APA"). SMDI objected to this motion. The hearing was set for December 7, 2006. To add confusion to who represented the debtor, Mr. Hyde also filed an objection to the sale motion on behalf of the debtor on or about December 4, 2006. Four days later, Mr. Hyde and Mr. Gilman filed a notice of withdrawal of counsel and notice of substitution.

On December 7 and 8, 2006, the bankruptcy court conducted evidentiary hearings on the sale motion. At the conclusion of the hearing, the bankruptcy court issued a memorandum decision approving the trustee's sale of a co-interest in the AP to ConsumerInfo for $1.9 million. An order approving the sale (the "Sale Order") was entered on December 13. Pursuant to the Sale Order and the approved APA, ConsumerInfo would be entitled to the ownership of the

Domain Name, if the AP was successful, plus 25% of any damages award. SMDI did not appeal the Sale Order.

In addition to holding a co-interest in the AP, ConsumerInfo also acquired an assignment of various proofs of claims, including proof of claim 1 formerly held by Arrow Moving & Storage, proof of claim 32 formerly held by Magic Nickel, and proof of claim 27 formerly held by CCB Data Corp. ("CCB Data"), in the amount of $131,180, which it acquired on January 22, 2007.

On January 31, 2007, ConsumerInfo filed proof of claim 42, which represented a claim it had purchased from CCB Data. Through proof of claim 42, ConsumerInfo alleged that it had purchased all the potential interest in the Domain Name previously held by CCB. ConsumerInfo further alleged that at the time of filing, the debtor had legal title to the Domain Name as CCB Data's agent. Accordingly, ConsumerInfo initially claimed, through claim 42, that the Domain Name was not property of the estate because equitable title was held by CCB Data. Subsequently, ConsumerInfo amended proof of claim 42 on July 3, 2007, to assert only an unsecured claim for $2.1 million alleging that the debtor had converted the Domain Name pre-petition from CCB Data, had breached his fiduciary duties to CCB Data, and had been unjustly enriched by CCB Data's development of the website. CCB Data also filed proof of claim 27, which ConsumerInfo purchased, asserting an unsecured claim against the debtor but under a different theory.

SMDI and the trustee and ConsumerInfo filed competing chapter 11 reorganization plans. SMDI and its affiliate, Magnet Media, filed the SMDI Plan in June 2007. Subsequently, ConsumerInfo and the trustee filed their Joint Plan. Each of the plans proposed to pay unsecured

creditors 100% of their allowed claims plus 10% interest.  However, the plans were quite different.

<u>The SMDI Plan</u>

SMDI's plan proposed to place enough money of its own with the plan trustee to pay all claims in full.  Evidence presented indicated that this would be approximately $2.6 million.  Additionally, under SMDI's plan, the plan trustee, SMDI, or any other party in interest with a financial stake in the outcome of an objection to any claim would have standing to object to claims following confirmation.  Further, SMDI's plan would require a dismissal of the AP and conveyance to SMDI of any claim that the estate might have to the Domain Name.  Finally, the SMDI Plan required the chapter 11 trustee to turn over all assets in his possession to the SMDI plan trustee.  From all of the funds on hand plus additional funding from SMDI, the plan trustee would pay ConsumerInfo $1,825,000, which SMDI alleged is the amount required under the APA if the chapter 11 trustee settles the AP without ConsumerInfo's consent.

<u>The Joint Plan</u>

The Joint Plan provided for payment of all claims from the funds on hand with the trustee which came from ConsumerInfo's purchase price, plus additional amounts due from ConsumerInfo.  The Joint Plan provided for the subordination of claims 27 and 42.  Under this plan, the AP would continue.  As originally filed, the Joint Plan provided that the trustee would be the sole party with standing to object to claims following confirmation.  However, the Joint Plan was later amended to allow SMDI to petition the court for an authorization to object to claims after the conclusion of the AP, provided there are monetary recoveries.  Monetary

recoveries as defined in the AP were to inure to the benefit of the residual interest of the debtor now assigned to SMDI.

<u>The Bankruptcy Court's Confirmation of the Joint Plan</u>

Between August 28, 2007 and October 15, 2007, the bankruptcy court held a seven-day trial where it considered the merits of the competing plans. The bankruptcy court confirmed the Joint Plan and declined to confirm the SMDI Plan. The bankruptcy court found that SMDI's proposed treatment of the AP was not consistent with section 363(b) and (f) of the Bankruptcy Code and the court-approved APA, that settlement could not be imposed on the trustee, that the SMDI Plan was not proposed in good faith, and was not feasible.

<u>SMDI's Appeal</u>

On October 30, 2007, SMDI appealed the bankruptcy court's decision to this court. On February 13, 2008, ConsumerInfo and the trustee jointly moved to dismiss the appeal for mootness, arguing that this court could not grant SMDI any effective relief in this appeal, and, even if it could, such relief would be inequitable. On May 8, 2008, the court dismissed the appeal finding that SMDI's appeal had become both constitutionally and equitably moot. On June 10, 2008, SMDI appealed the mootness dismissal order to the United States Court of Appeals for the Tenth Circuit. The Tenth Circuit conducted oral argument on January 12, 2008. On November 3, 2009, the Tenth Circuit issued its written opinion, reversing the mootness dismissal order. In so doing, the Tenth Circuit remanded SMDI's appeal back to this court for consideration on the merits.

The court notes that SMDI's appeal has little to do with what is in the best interest of the debtor's creditors. Rather, at the heart of this appeal is a fight between ConsumerInfo and SMDI for the domain name "freecreditscore.com."

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction to review the decision of the bankruptcy court pursuant to 28 U.S.C. § 158(a). The district court, acting as a court of appeal, applies the same standards of review that govern appellate review in other cases. *In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005). The conclusions of law of the bankruptcy court are reviewed *de novo*, while the bankruptcy court's findings of fact are reviewed for clear error. *See id.* "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Weed*, 389 F.3d 1060, 1071 (10th Cir. 2004) (citation omitted). It is the appellant's burden to demonstrate why the bankruptcy court's findings of fact are clearly erroneous.

Where issues are committed to the bankruptcy court's discretion, review is for abuse of discretion. *See In re Sharp*, 361 B.R. 559, 565 (10th Cir. BAP 2007) (citation omitted). Under the abuse of discretion standard, the bankruptcy court's decision will not be disturbed unless the court has a definite and firm conviction that the bankruptcy court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. *See Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1137 (10th Cir. 1991).

## DISCUSSION

In order to confirm a chapter 11 plan, the plan proponent must show, by a preponderance of the evidence, that the plan complies with all applicable provisions of 11 U.S.C. § 1129(a).

*See In re Investment Co. of the Southwest, Inc.*, 341 B.R. 298, 310 (10th Cir. BAP 2006).  If the plan does not comply with one of the applicable provisions of section 1129(a), the plan may not be confirmed.  The bankruptcy court found that the Joint Plan of ConsumerInfo and the trustee satisfied the applicable requirements of section 1129(a), and should be confirmed, while the SMDI Plan did not and should not be confirmed because it failed to comply with sections 1129(a)(1), 1129(a)(3), and 1129(a)(11).

SMDI presents two issues on appeal: (1) whether the bankruptcy court erred when it determined that ConsumerInfo and the trustee met their burden to show that the Joint Plan satisfied the good faith requirement of § 1129(a)(3), met the chapter 7 equivalency test of § 1129(a)(7), and was fair and equitable under § 1129(b); and (2) whether the bankruptcy court erred when it determined that SMDI did not meet its burden to show that the SMDI Plan was proposed in good faith under § 1129(a)(3) and was feasible under § 1129(a)(11).

**A.      Confirmation of the Joint Plan**

SMDI contends ConsumerInfo and the trustee failed to meet their burden to show that the Joint Plan was proposed in good faith under § 1129(a)(3), that the Joint Plan satisfied the chapter 7 equivalency test of § 1129(a)(7), and that the Joint Plan was fair and equitable to SMDI under § 1129(b).  Each of these confirmation requirements will be addressed in turn.

1.      The § 1129(a)(3) Good Faith Requirement

Section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law.  11 U.S.C. § 1129(a)(3).  At the confirmation hearing, SMDI argued the Joint Plan should not be confirmed because of (a) the trustee's lack of disinterestedness and (b) ConsumerInfo's unlawful interference with an earlier joint plan between the debtor and SMDI.

The bankruptcy court rejected both arguments.  Now, SMDI argues the bankruptcy court committed reversible error in so doing.

a.      *The Disinterestedness of the Trustee*

SMDI claims that the bankruptcy court should have denied confirmation of the Joint Plan for lack of good faith because the trustee was not disinterested.   SMDI argues that a trustee is not disinterested if "in the slightest degree" the trustee had some relationship or connection "that would faintly color the independent and impartial attitude required by the Code and Bankruptcy Rules."  *In re Roberts*, 46 B.R. 815, 828 n.26 (Bankr. D. Utah 1985).  SMDI contends the contractual and fiduciary duties owed by the trustee to ConsumerInfo, as contained in the APA, foreclosed any notion that the trustee could have qualified as a "disinterested" person at any time after ConsumerInfo became the largest creditor in the case through its purchase of the CCB claims.  According to SMDI, at the moment ConsumerInfo filed the CCB claims, the trustee was required to answer whether he could continue to work as ConsumerInfo's servant under the APA, on one hand, and still, on the other hand, discharge his fiduciary duty to critically examine the claims.

Whether the bankruptcy court applied the correct legal standard in analyzing the trustee's disinterestedness is a mixed question of law and fact that the court reviews *de novo*.  *See United States v. Patzer*, 15 F.3d 934, 939 (10th Cir. 1993) ("[o]n the mixed question of whether the facts satisfy the proper legal standard, we conduct a *de novo* review if the question primarily involves the consideration of legal principles") (internal quotation omitted).  The Bankruptcy Code defines "disinterested person" as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any

10

direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). The bankruptcy court found that the trustee was disinterested because there was no evidence that the trustee acted in a biased manner and the trustee's obligation under the APA to cooperate with ConsumerInfo in certain circumstances did not create a per se inference of lack of disinterest. (*See* Transcript of Mot. To Dismiss Hearing at 101–02, June 14, 2007.) While the potential of a conflict may have justified further inquiry by the bankruptcy court, under the facts of this case, it did not itself warrant a finding that the trustee was not disinterested. SMDI has failed to cite and the court has not found a single case where a trustee's court approved and non-personal relationships resulted in the denial of a confirmation plan because the trustee was not disinterested. The bankruptcy court applied the correct legal standard in analyzing the trustee's disinterestedness.

In addition, whether the trustee had conflicting loyalties because of the APA was an issue raised and rejected at the sale hearing and not appealed by SMDI. The court recognizes that ConsumerInfo's acquisition of the CCB claims was an awkward development in the case, however, the bankruptcy court ratified the trustee's business judgment and integrity after evaluating the situation and the trustee's handling of the matter. Without any evidence of actual bias or misconduct, SMDI's disinterestedness argument effectively amounts to an untimely collateral attack on the APA and the Sale Order. Accordingly, the court finds that the bankruptcy court did not err in finding that the trustee was disinterested.

     *b.*    *ConsumerInfo's Conduct*

At the confirmation hearing, SMDI presented evidence of communications initiated by the debtor with ConsumerInfo's counsel and alleged "side deals" made during those discussions

to subvert SMDI's efforts in filing a joint plan with the debtor.  SMDI argued that these "improper" communications took place at a critical time in the case when the bankruptcy court was deciding the sale motion, and SMDI's inability to file a plan with the debtor due to ConsumerInfo's interference impacted the bankruptcy court's decision to approve the Sale Order.   SMDI argued that the APA and the Joint Plan were the fruits of ConsumerInfo's wrongful conduct and therefore the bankruptcy court should have been persuaded to deny confirmation of the Joint Plan on the grounds that it was being proposed in bad faith.

During the course of the confirmation hearing, on an objection to certain evidence presented by SMDI, the bankruptcy court ruled that much of SMDI's lack of good faith arguments and supporting evidence were irrelevant.  At one point, counsel for SMDI contended that the bankruptcy court should admit into evidence certain transcriptions of voice mails left by Mr. Paige for ConsumerInfo's counsel.  SMDI argued that although the transcribed messages did not show any evidence of bribery, there was evidence of discussions preliminary to a bribe from ConsumerInfo.  SMDI also wanted to call ConsumerInfo's counsel to the stand to testify.

Relying on the Tenth Circuit's discussion in *In re Pikes Peak*, 779 F.2d 1456 (10th Cir. 1985), the bankruptcy court determined that "the test of good faith is met if there is a reasonable likelihood that the plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code, that is, is the plan feasible, practical, and would it enable the company to continue its business and pay its debts in accordance with the plan provisions."  *See In re Paige*, 2007 WL 4143212, at *12 (citing *In re Pikes Peak*, 779 F.2d at 1459).  With that standard in mind, the bankruptcy court ruled that under the facts of the case, neither the communications between Mr. Paige and ConsumerInfo nor any other conduct by ConsumerInfo between October

13 and December 7, served as sufficient grounds for finding that the Joint Plan was not being proposed in good faith or by any means forbidden by law. As such, the bankruptcy court sustained the objection to the admission of the transcribed messages and refused to require ConsumerInfo's counsel to testify. Still, the bankruptcy court heard testimony from the debtor, Mr. Hyde, Mike Balducci from ConsumerInfo and the trustee. The bankruptcy court was not persuaded that anything discussed between Mr. Paige and ConsumerInfo's counsel required the bankruptcy court to make a finding of lack of good faith on the part of ConsumerInfo and the trustee. Furthermore, the bankruptcy court found that neither ConsumerInfo nor its counsel made any promises to the debtor or bribed the debtor.

In this appeal, SMDI argues that (i) the bankruptcy court applied an incorrect legal standard for good faith under section 1129(a)(3) and (ii) abused its discretion in excluding the transcribed voice mails and the testimony of ConsumerInfo's counsel. The court addresses each argument below.

(i)     Good Faith under Section 1129(a)(3)

SMDI argues the bankruptcy court reliance on the few sentences in the *Pikes Peak* case as the final word on the scope of a good faith inquiry was mistaken. According to SMDI, the bankruptcy court's good faith standard suggests that the "means" of proposing and obtaining confirmation of a plan is justified by the "ends." SMDI argues this cannot be, and is not, the standard. SMDI contends that other courts within the Tenth Circuit's controlling influence have recognized that there is no hard and fast definition of good faith, but the court must look at the totality of the circumstances in any given case. *See In re Global Water Techs., Inc.*, 311 B.R. 896, 903 (Bankr. D. Colo. 2004).

Whether the bankruptcy court employed the correct legal standard for good faith is a question of law reviewed *de novo*. *See Neiberger v. Fed Ex Ground Package Sys., Inc.,* 566 F.3d 1184, 1189 (10th Cir. 2009) (finding whether correct legal standard was applied is a legal issue reviewed *de novo*); *In re Payne*, 323 B.R. 723, 727 (9th Cir. BAP 2005). Good faith is not defined in section 1129(a)(3), but the Tenth Circuit has addressed this issue in *In re Pikes Peak*. In that case, Travelers Insurance Company ("Travelers") held a deed of trust against real property owned by the Pikes Peak Water Company ("Pikes Peak"). *See In re Pikes Peak*, 779 F.2d at 1457. After Travelers initiated foreclosure proceedings on its deed of trust, Pikes Peak filed a voluntary petition for reorganization under Chapter 11. *See id.* Pikes Peak filed a reorganization plan and Travelers objected on the basis that the plan was not proposed in good faith. *See id.* The bankruptcy judge confirmed the plan over Travelers' objection, stating:

> The test of good faith is met if there is a reasonable likelihood that the plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code, that is, is the plan feasible, practical, and would it enable the company to continue its business and pay its debts in accordance with the plan provisions. The Court finds that, under all the evidence in this case, the plan does meet these standards and has been proposed in good faith.

*See id.* at 1459. Travelers appealed the bankruptcy court's determination to the district court and eventually to the Tenth Circuit. *See id.* at 1457. In affirming the bankruptcy judge's determination, the Tenth Circuit stated:

> In finding a lack of good faith, courts have looked to whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions. Not confirming the plan for lack of good faith is appropriate particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. However, such is not the case here. The bankruptcy judge wrote: 'The evidence is a concomitant increase in demand for municipal water. . . . [T]he evidence clearly established that there are other profitable markets available for the Debtor's water.' With these words in mind, we cannot agree with the

asserting of the secured creditor that the debtor's plan was not proposed in good faith.

*Id.* at 1459–60 (citations omitted). In this case, the bankruptcy court found the Joint Plan met the good faith test of section 1129(a)(3) because it was feasible and set out to achieve the plan's intended result. *In re Paige*, 2007 WL 4143212, at *13–14. The bankruptcy court's legal standard for good faith is consistent with the language of *In re Pikes Peak,* which has not been reversed or modified, and is, therefore, controlling authority in the Tenth Circuit. Accordingly, the court finds that bankruptcy court did not apply an incorrect legal standard for good faith under section 1129(a)(3).

Even if the *Pikes Peak* standard was incorrect, the court finds that SMDI's allegations of improper interference by ConsumerInfo are unpersuasive. The conduct SMDI challenges occurred prior to the time the bankruptcy court entered the Sale Order in December of 2006, and almost one year before the confirmation took place. If SMDI believed ConsumerInfo's conduct surrounding the Sale Order was in bad faith, it should have appealed the Sale Order. Plus, it was the debtor who initiated contact with ConsumerInfo and neither ConsumerInfo nor its counsel made any promises to the debtor or bribed the debtor. The debtor told ConsumerInfo and its counsel that he was not represented. Moreover, ConsumerInfo's conduct did not hinder SMDI's ability to file a plan because Mr. Paige was no longer a debtor-in-possession at the time of the alleged improper contacts. As the bankruptcy court noted, if SMDI was prejudiced between October 13 and December 7, it was because of the debtor's conduct and not because of any wrongdoing by ConsumerInfo or its counsel. As a result, the bankruptcy court did not err in finding that ConsumerInfo's conduct was not in bad faith.

(ii)  Exclusion of SMDI's Evidence

15

SMDI argues the bankruptcy court erred when it denied full exploration of the issues related to ConsumerInfo's conduct. SMDI contends the bankruptcy court's exclusion of the transcribed voice mails and the testimony of ConsumerInfo's counsel compromised a substantial right of SMDI in opposing confirmation of the Joint Plan. SMDI claims the excluded evidence would have allowed full development of relevant questions such as: (1) the extent of ConumserInfo's knowledge that the debtor was represented by counsel; (2) whether ConsumerInfo's attorneys offered anything besides $20,000 to hire new counsel; and (3) whether the money paid or other incentives offered, if any, were in consideration for the debtor's cooperation in abandoning his agreement with SMDI to file a joint plan.

The court reviews the bankruptcy court's decision to admit or exclude evidence for an abuse of discretion. *See In re Sharp*, 361 B.R. at 565. "When a trial court excludes evidence upon which the offering party properly objects, [the reviewing court] will reverse only if the exclusion is an abuse of discretion that results in manifest injustice to the parties." *Id.* (citation omitted). Here, SMDI has not provided any evidence that the bankruptcy court's exclusion of the evidence in question was an abuse of discretion or resulted in manifest injustice. The bankruptcy court allowed SMDI to present extensive evidence regarding ConsumerInfo's alleged misconduct, including testimony from the debtor, Mr. Hyde, Mike Balducci from ConsumerInfo and the trustee. The bankruptcy court, however, was not persuaded that anything discussed between the debtor and ConsumerInfo should require it to make a finding of lack of good faith on the part of ConsumerInfo and the trustee in filing their plan. The excluded voice mails did not show any evidence of bribery and it is unclear what testimony from ConsumerInfo's counsel would have added. The bankruptcy court had the discretion to exclude evidence it believed was

irrelevant and/or a waste of time.  Thus, the court finds the bankruptcy court did not abuse its

discretion in excluding some of the evidence concerning ConsumerInfo's alleged misconduct.

In sum, the court finds the bankruptcy court did not err in finding that the Joint Plan was

proposed in good faith under section 1129(a)(3).  The bankruptcy court's determination that the

requirement of § 1129(a)(3) was met is affirmed.

2.      The § 1129(a)(7) Chapter 7 Equivalency Test

Section 1129(a)(7) requires that the plan either be accepted by each impaired class, or

provide that each non-accepting member receive at least as much as they would in a chapter 7

liquidation.  11 U.S.C. § 1129(a)(7).

The bankruptcy court found that the Joint Plan met the chapter 7 equivalency test because

SMDI would receive at least as much as it would in a chapter 7 liquidation as under the Joint

Plan, virtually nothing.  SMDI argues the bankruptcy court's finding was erroneous because the

trustee and ConsumerInfo failed to show that in a hypothetical chapter 7 liquidation, the estate

would be insolvent so that SMDI would get nothing on account of its residual interest.

According to SMDI, the trustee gave his opinion as to the solvency of the estate, but he and

ConsumerInfo failed to prove it with sufficient evidence.  In addition, SMDI contends that

trustee and ConsumerInfo overstated the probable tax liability in a chapter 7, failed to present

evidence of secondary assets, failed to present an assessment of objections at the time of

confirmation, and overstated probable Chapter 7 expenses. Finally, SMDI argues that the

bankruptcy court should have found that the AP had substantial value to the estate in a chapter 7

liquidation.

Sufficiency of the evidence is reviewed under a clearly erroneous standard, and the bankruptcy court's decision need not be correct, only permissible. *In re BYOC Int'l, Inc.*, 233 B.R. 176, 1998 WL 780435, at *2 (10th Cir. BAP 1998). The evidence presented at the confirmation hearing, including the trustee's testimony, showed that if the existing assets of the estate were used to pay the existing claims in a chapter 7 liquidation, creditors would not be paid in full and there would be nothing at all distribute to equity. As the trustee testified on this issue:

> Q.     (BY MR. PAYNE) Okay. Do you believe that a Chapter 7 estate would have— would be able to make a distribution, immediate distribution to creditors and litigate the adversary proceeding?
>
> A.     No. No. There would be insufficient funds in the estate to do so. The amount of the claims and the amount that would need to be reserved for the claims, the claims exceed what is in the estate.
>
> Q.     So do you believe that as of the effective date of the joint plan, that as of the date that would be, that if the case were liquidated under Chapter 7, as of that date, that there would be sufficient funds to pay creditors' claims in full?
>
> A.     No. There would not be.

(Transcript of Confirmation Hearing at 357, Sept. 7, 2007.) Exhibit CCC also included an analysis by the trustee showing cash available of approximately $1.856 million with liabilities of approximately $2.288 million, resulting in a deficit of approximately $432,000 before the chapter 7 administrative costs were added. The bankruptcy court found the trustee's chapter 7 analysis persuasive, and adopted it as the most likely result in a hypothetical chapter 7 liquidation. Specifically, the bankruptcy court found that SMDI, as the residual interest holder, would most likely receive nothing in a hypothetical chapter 7 liquidation. Based on the record before the court, the bankruptcy court's finding is permissible. SMDI's individual arguments to the contrary are unavailing for the following reasons.

SMDI argues it was error for the bankruptcy court to adopt the trustee's analysis because it overestimated chapter 7 expenses and tax liabilities and it ignored the estate's secondary assets. SMDI's arguments are fair, however, the court is not convinced that the trustee's analysis was erroneous. The court will not second guess the bankruptcy court's decision to adopt the analysis especially in light of the bankruptcy court's familiarity with all the assets and liabilities of the estate and its first hand ability to view the evidence and assess its credibility and probative value.                SMDI also argues that the bankruptcy court had no evidentiary basis to conclude that SMDI would receive nothing on account of its residual interest in chapter 7 case because the trustee failed to provide an analysis of certain "objectionable" claims in his hypothetical chapter 7 case. The court is not convinced that it was a mistake for the bankruptcy court not to require the trustee to provide an estimate of disputed claims when he was not able or in a position to do so. Whether such analysis would alter the bankruptcy court's chapter 7 equivalency analysis is dubious. In fact, it appears that if any claims were disallowed, SMDI, as the residual interest holder, would receive the same in a chapter 7 liquidation as under the Joint Plan.

Finally, SMDI challenges the bankruptcy court finding that SMDI would not receive a substantial amount of money in a chapter 7 case from the AP. At the confirmation hearing, SMDI argued that in a hypothetical chapter 7 case, on account of its residual interest, it would receive all of the excess monetary recoveries payable to the estate from the AP after payment of Class 2 and 3 claims in full. SMDI's argument was premised on SMDI's estimation that the AP was worth millions of dollars. SMDI claims the bankruptcy court committed legal error by failing to consider SMDI's evidence showing that the AP had substantial value to the estate. Specifically, SMDI contends the bankruptcy court failed to consider: (1) the SMDI Plan (which

mandated settlement of the AP for a payment of $2.6 million), (2) Stephen May's testimony that

he would settle the AP in a chapter 7 case for at least $2.6 million and had the money to do so,

and (3) Stephen May's testimony that he valued the Domain Name at $25,000,000.

In response to SMDI's arguments that the residual interest holder would receive

substantial amounts of money in a chapter 7 case because the AP was worth millions of dollars,

the bankruptcy court stated:

> SMDI's valuation of the AP at $2.6 million is not adequately supported by the evidence presented at the confirmation hearing because it is merely a calculation of the amount that ConsumerInfo has paid for the interest in the AP, plus the additional amounts necessary to fund the plan.

> To say that the Domain Name has additional value is also speculative. The Domain Name was sold for $1.9 million last December in a Trustee sale. Although it was characterized as an interest in the AP, no further consideration will be due if the Trustee wins, accordingly, it cannot be valued twice. Thus, SMDI's valuation of the AP and any monetary recoveries from the AP are merely speculative.

*In re Paige*, 2007 WL 4143212, at *18. The bankruptcy court's chapter 7 evaluation relied on

the Sale Order, the APA, and its knowledge of the case. SMDI claims that in a chapter 7 case it

would offer millions to settle the AP, nonetheless, the undisputed testimony at the confirmation

hearing was that SMDI never made such an offer and even if there was an offer to settle the AP,

the result likely would have been no different for a liquidating chapter 7 than under the Joint

Plan. From the record, it is clear that Mr. May desired to purchase the Domain Name that the

estate had already sold to ConsumerInfo under the Sale Order, an order that SMDI did not

appeal. The bankruptcy court was not free to ignore the effect of the APA and the Sale Order.

Moreover, Mr. May's estimate that the Domain Name was worth $25,000,000 is dubious and, at

best, debatable. SMDI may disagree with the bankruptcy court's valuation of the AP, however,

the court is not persuaded it was in error. Accordingly, the bankruptcy court's holding that the

estate would be insolvent in a chapter 7 liquidation in part because the AP had little or no additional value to the estate was not clearly erroneous.

All in all, the court finds the bankruptcy court did not err in finding that SMDI would not receive less under the Joint Plan than under a hypothetical chapter 7 liquidation. The bankruptcy court's determination that the requirement of § 1129(a)(7) was met is affirmed.

3.    The § 1129(b) Cramdown

A plan may be confirmed if each class of impaired claims accepts the plan, or at least one class of impaired claims accepts the plan. 11 U.S.C. §§ 1129(a)(8), (a)(10). If not all classes of impaired claims accept the plan, the plan proponent may utilize the so-called "cramdown" procedure. *See In re Investment Co. of the Southwest, Inc.*, 341 B.R. at 317–18. Under a cramdown, a plan must meet all of the requirements set forth in § 1129(a), except for § 1129(a)(8), and must also satisfy § 1129(b). *See id.* at 318.

Section 1129(b)(1) of the Bankruptcy Code permits the bankruptcy court to confirm a plan over the objection of an impaired class "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims . . . that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). The fair and equitable requirement of section 1129(b), invokes the absolute priority rule. As codified in section 1129(b)(2)(B)(ii), the absolute priority rule requires that if the holders of claims or interests in a particular class receive less than full value for their claims or interests, no holders of claims or equity interests in a junior class may receive property under the plan. *Id*. § 1129(b)(2)(B)(ii); *see Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle St. P'ship*, 526 U.S. 434, 441–42 (1999).

SMDI argues that the bankruptcy court committed reversible error by gauging "fair and equitable" treatment solely on whether the "absolute priority rule" was met. SMDI contends that more than technical compliance with section 1129(b)(2) is required to ensure that a plan is fair and equitable to a dissenting class. As a result, SMDI claims that the bankruptcy court erred and abused its discretion in failing to properly consider several aspects of the Joint Plan which were not fair and equitable, such as the restrictions on SMDI's ability to object to the CCB claims, SMDI's inability to object to the fees and expenses to be charged by trustee under the Liquidating Trust, and the trustee's waiver of the right to elect remedies under the AP.

The court reviews *de novo* whether the bankruptcy court employed the correct legal standard to determine whether the Joint Plan was fair and equitable. *See In re Investment Co. of the Southwest, Inc.*, 341 B.R. at 317–18. The Bankruptcy Code provides that a "'fair and equitable' reorganization plan is one which complies with the absolute priority rule." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207 (1988). Section 1129(b)(2)'s absolute priority rule requires that if the holders of claims or interests in a particular class receive less than full value for their claims or interests, no holders of claims or equity interests in a junior class may receive property under the plan. 11 U.S.C. § 1129(b)(2)(B)(ii); *see Bank of America Nat. Trust and Sav. Ass'n,* 526 U.S. at 441–42. The bankruptcy court found that the Joint Plan satisfied the requirements of section 1129(b) because it provided for the payment of creditors in full with interest, and no junior class received anything at the expense of a senior class and creditors were not paid more than they were owed. Specifically, the bankruptcy court found:

> [T]he Joint Plan does not discriminate unfairly in that all similar claims are treated the same, and the Joint Plan is "fair and equitable" to Class 4. Specifically, the Joint Plan provides that Class 4 interest-holder will receive, on account of such interest, property of value as of the effective date of the plan equal to the greatest of the

> allowed amount of any fixed liquidation preference to which such holder is entitled
> and a fixed redemption price to which such holder is entitled, or the value of such
> interest.  Additionally, the holder of any interest that is junior to the interest of the
> Class 4 interest-holder will not receive or retain on account of such junior interest
> any property.

*In re Paige*, 2007 WL 4143212, at *19.  The court recognizes that some courts have found that

the absolute priority rule does not end the "fair and equitable" inquiry, however, the Tenth

Circuit has not mandated that the "fair and equitable" inquiry go beyond the absolute priority

rule.  To the contrary, the Tenth Circuit has indicated that a plan can be "fair and equitable" once

the absolute priority rule is satisfied.  *See Unruh v. Rushville State Bank*, 987 F.2d 1506,

1507–08 (10th Cir. 1993).  Thus, the court finds that the bankruptcy court did not apply an

incorrect legal standard to determine whether the Joint Plan was fair and equitable under section

1129(b).  The bankruptcy court's determination that the requirement of § 1129(b) was met is

affirmed.

In sum, the court affirms the bankruptcy court's finding that the Joint Plan of

ConsumerInfo and the trustee satisfied the applicable requirements of section 1129(a).

Therefore, the court affirms the bankruptcy court's confirmation of the Joint Plan.

**B.**     **Non-confirmation of the SMDI Plan**

As discussed above, the bankruptcy court did not err in finding that the Joint Plan met all

of the confirmation requirements and in entering the Joint Plan Confirmation Order.  Given the

lawfulness of these decisions, whether or not the bankruptcy court erred in refusing to confirm

the SMDI Plan is merely academic.  Section 1129(c) of the Bankruptcy Code provides that, even

if two competing bankruptcy plans are confirmable, "the court may only confirm one plan."  11

U.S.C. § 1129(c). Thus, the court need not decide whether SMDI's Plan was confirmable because the court already affirmed the bankruptcy court's confirmation of the Joint Plan.

**CONCLUSION**

Based on the foregoing discussion, the bankruptcy court's judgment is AFFIRMED. The bankruptcy court handled this matter very carefully and had a sound evidentiary basis for each of its findings and rulings. The record shows that the bankruptcy court, which was in the best position to weigh the evidence and determine the facts, justly found that the Joint Plan should be confirmed. This is one case where virtually all of the debtor's creditors got paid in full. However, the entire bankruptcy system appears to have been used as a means for the debtor to avoid his debts while hiding his one lucrative asset, the domain name. When all was said and done, that asset became the focus of the infighting, and remarkably everyone still got paid, including presumably the lawyers.

The trustee and ConsumerInfo also have a motion to supplement the record on appeal before the court. This motion is DENIED as moot.

IT IS SO ORDERED.

DATED this 21st day of October, 2010.

_____
Dee Benson
United States District Judge